FILED

2014 Apr-30  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CATHERINE E. BROOKS,** | } | |
| | } | |
| **PLAINTIFF,** | } | |
| | } | |
| **v.** | } | **CASE NO.:  2:10-CV-02099-MHH** |
| | } | |
| **THE STATE OF ALABAMA** | } | |
| **DEPARTMENT OF HUMAN** | } | |
| **RESOURCES DIRECTOR, NANCY** | } | |
| **T. BUCKNER, JEFFERSON** | } | |
| **COUNTY DEPARTMENT OF** | } | |
| **HUMAN RESOURCES,** | } | |
| **DIRECTOR AMANDA RICE,** | } | |
| **CATHERINE DENARD, ANGELA** | } | |
| **LACY MCCLINTOCK, PATRICIA** | } | |
| **MUSCOLINO,** | } | |
| | | |
| **DEFENDANTS.** | | |

## MEMORANDUM OPINION

Plaintiff Catherine E. Brooks formerly worked as a program manager for the Jefferson County Department of Human Resources.  According to Ms. Brooks, while she was an employee of the Department, her supervisors discriminated against her on the basis of her race, sex, and age and retaliated against her after she protested the purportedly unlawful treatment of a co-worker.  Ms. Brooks contends that the Department and some of its employees violated her rights under the following statutes:  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981; 42

U.S.C. § 1983; and the Age Discrimination in Employment Act of 1967 (ADEA).[1] In her lawsuit, Ms. Brooks seeks compensatory and punitive damages and equitable relief, including back-pay, lost wages, and re-instatement.  (Doc. 14, pp. 4-5).

Defendants Jefferson County Department of Human Resources, State of Alabama Department of Human Resources, Nancy Buckner, Amanda Rice, and Angela McClintock ask the Court to enter summary judgment on all of Ms. Brooks's claims.[2]  (Doc. 31).  As explained in greater detail below, the Court grants the motion because Ms. Brooks has not presented evidence that establishes a prima facie case of discrimination and retaliation.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Initially, Ms. Brooks also asserted a claim under the Americans with Disabilities Act (ADA). The court dismissed that claim early in this litigation.  (Doc. 14; Doc. 19).

[2] Ms. Brooks did not serve defendants Catherine Denard and Patricia Muscolino, so those defendants have not moved for summary judgment.

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex*, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## FACTUAL BACKGROUND

### Ms. Brooks's Employment History at the Department

Ms. Brooks worked for the Jefferson County Department of Human Resources from 2001 until 2010. She was a program supervisor between 2005 and 2010. (Doc. 35-2). In March 2006, Ms. Brooks received a written warning from her direct supervisor, Terry Beasley, for "insubordination: failure to follow a

directive." (Doc. 35-2, pp. 15-16). Nine months later, Ms. Brooks received an official reprimand from Beasley for "insubordination" and "failure to perform job properly." (Doc. 35-4, pp. 3-6).[3]

The record concerning Ms. Brooks's job performance in 2007 is unremarkable. On June 18, 2008, Ms. Brooks's immediate supervisor, Catherine Denard, told Ms. Brooks that Angela McClintock wanted Margaret Moore, another employee of the Department, "written up." Ms. Brooks, Ms. Moore's direct supervisor, thought that Ms. Moore's work was satisfactory. (Doc. 31-2, p. 88). Ms. Brooks was unwilling to follow Ms. Denard's instruction. She told Ms. Denard that the State of Alabama's personnel policies do not permit supervisors to write up an employee for something she did not do. (Doc. 31-2, pp. 91, 96). In response, Ms. Denard asked Ms. Brooks to go with her to Ms. McClintock's office to discuss the matter. Along the way, Ms. Brooks collapsed and was hospitalized. (Doc. 31-2, p. 90). According to Department records, Ms. Moore received an official warning on July 24, 2008, for failure to perform job and insubordination. (Doc. 35-6, p. 3).

---

[3] In 2006, Beasley was Ms. Brooks's immediate supervisor. Ms. Brooks's next level supervisor was Angela McClintock, an Assistant Director at the Department. The third level supervisor was Ms. Trish Muscolino, the Department's Interim Director. (*See* Doc. 31-2, pp. 53-56, 58-70). Sometime between 2006 and 2008, Ms. Denard replaced Beasley as Ms. Brooks's immediate supervisor.

On July 2, 2008, Ms. Denard issued an official reprimand to Ms. Brooks for insubordination, failure to follow an order, disobedience, and failure to submit to authority as shown by demeanor and words, and disruptive conduct. (Doc. 35-3, pp. 4-5). According to the reprimand, Ms. Brooks refused to oversee a unit whose supervisor was about to take maternity leave. The official reprimand reads:

> You stated that you were not going to take this and that it felt very derogatory. You stated that you would need to receive something in writing before [overseeing the unit] and once you received something in writing that you would discuss it with your attorney. You stated that you did not care who this upset . . . You stated that the CAN supervisors would not respond to my supervision and that there would be a major uprising if this plan was put into place. . . . You stated that there was no way that I was going to sell this to you.
> . . .
>
> Even though you did acknowledge your inappropriate reaction and have begun to positively engage with the workers in the unit, it remains that your initial behavior was not acceptable. It is an expectation that as a program supervisor and a leader of the CAN program area you should be able to receive directives in a constructive and respectful manner. Your refusal to follow a directive unless received in writing, and stating that you would have to talk to your attorney first, is not acceptable professional behavior.
>
> In addition, on June 11, 2008, Katie Walter informed JCDHR attorney Diane Dunning that you had told her "they will try to make it look like it is all your fault." Ms. Walter was referring to a child death for which the criminal trial in the death of this child is pending. This behavior was unprofessional, inappropriate and unacceptable. Your intentional behavior of undermining the management and administration of this agency in this manner is insubordinate and divisive.

(Doc. 35-3, pp. 4-5).

On July 27, 2008, Ms. Brooks submitted to Ms. Denard a memorandum entitled "Rebuttal to Reprimand" regarding "Wrongful Administration of a Personnel Action." (Doc. 35-3, p. 10-11). Ms. Brooks stated the following in her rebuttal:

> Catherine Denard has encouraged and engaged in an open relationship with me, in which, she has encouraged open and honest communication with her. She has often injected humor in to situations. What she failed to mention is that this was a playful moment, in which, she laughed. She also failed to mention that the directive was obey without anything in writing. **Therefore, it does not constitute insubordination.**
>
> . . . .
>
> Mrs. Denard asked Toney Hunter and I to be honest with her and tell her what was our opinion on why the CA/N area was performing so poorly. Initially, Mr. Hunter and I hesitated to respond. Mrs. Denard continued to assure us she wanted honesty. Little did I know that Mrs. Denard did not want honesty. I also did not know that Mrs. Denard was an expert at what the politicians call "spin". She took a few words totally out of context, to retaliat[e] against me in this so called farce of a reprimand.
>
> . . . .
>
> Now, I can assure you that my younger counterpart has not received any disciplinary action at this time or any prior time when it was evident to all that his actions were out-of-compliance with personnel policies and procedures. I can only assume that Catherine Denard has singled me out as she has many others.
>
> As to the remaining statements in the reprimand, I will not dignify such lies with an answer.

(Doc. 35-3, pp. 10-11) (emphasis in original).

As a result of the July 2, 2008 reprimand, the Department deducted seven points from Ms. Brooks's responsibility score on her September 17, 2008 Employee Performance Appraisal.  (Doc. 31-4, pp. 35-37).  Ms. Denard and Ms. McClintock signed the appraisal.  (*Id.*).

EEOC Charge

On September 4, 2008, Ms. Brooks filed an EEOC charge of discrimination against the Department.  (Doc. 15-1).  The document states:

> I am a 55 year old individual that has filed a previous charge of discrimination against the employer named above.  On June 18, 2008, I also protested the unlawful treatment of a co-worker based on her race, Black and her age.  On July 2, 2008, I was given a letter of reprimand.  My younger male counterpart who is guilty of the same offenses for which I was reprimanded has not been reprimanded.  This younger male has not filed a previous charge of discrimination nor has he protested unlawful employment practices at the work site.  It is my belief that the employer has established a pattern and practices of unlawful employment discrimination against me.
>
> I was informed that I was reprimanded due to insubordination and the violation of various work rules.
>
> I believe that I was discriminated against in violation of the Age Discrimination in Employment Act of 1967, as amended and in violation of Title VII of the 1964 Civil Rights Act, as amended because of my sex and in retaliation for my previously filed charge of discrimination as well as my recent protests.

(*Id.*).  When completing the EEOC form, Ms. Brooks checked the boxes labeled "Retaliation" and "Age" under the heading "Discrimination Based On."  (*Id.*).

On September 11, 2008, the EEOC issued a Notice of Charge of Discrimination to Ms. Patricia D. Muscolino, Human Resources Director of the Jefferson County Department of Human Resources.  (Doc. 31-4, p. 38-40).  The notice stated that Ms. Brooks had filed a charge of employment discrimination under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.  The Notice instructed Ms. Muscolino to provide a statement of the Department's position with respect to Ms. Brooks's charge.  (*Id*.).  On May 5, 2010, the EEOC issued a Dismissal and Notice of Rights, which stated:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

(Doc. 15-1, p. 2).

Ms. Brooks filed this action on August 2, 2010.  She alleges that the defendants violated Title VII, § 1981, § 1983, the ADEA, and the ADA.  (Doc. 14).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants asked the Court to dismiss Ms. Brooks's amended complaint for failure to state a claim.  (Doc. 15).  After the parties briefed the motion, the presiding judge, Chief Magistrate Judge Paul Greene, recommended that the district court dismiss the following claims with prejudice:

(1)     all claims under Title VII and the ADEA asserted against Defendants Buckner, Rice, and McClintock, whether sued in their personal or official capacities;

(2)     the § 1981 and § 1983 claims against Defendant State of Alabama DHR and Defendant Jefferson County DHR;

(3)     all ADA claims against all Moving Defendants, i.e., the State of Alabama DHR, the Jefferson County DHR, Buckner, Rice, and McClintock; and

(4)     the Title VII and ADEA claims against Defendant State of Alabama DHR and defendant Jefferson County DHR to the extent that they seek "punitive damages."

(Doc. 18, p. 14).    The district court adopted Judge Greene's Report and Recommendation. (Doc. 19).[4]  The defendants conducted discovery on the balance of Ms. Brooks's claims.

Following discovery, the defendants filed a motion for summary judgment. (Doc. 31).    In support of the motion, the defendants submitted a brief and a collection of evidentiary materials that includes affidavits, deposition testimony, and unverified copies of some of Ms. Brooks's employment records.  (Docs. 31-1 th. 31-9).  Ms. Brooks filed a brief in opposition to the defendants' motion (Doc. 35) and submitted evidentiary materials, including unverified copies of some of her employment records, unverified copies of EEOC charges that other Department employees purportedly have filed, and unverified excerpts from the Department's

---

[4] Initially, Chief Magistrate Judge Paul Greene presided over this case. When he retired, the Court re-assigned the case to the undersigned judge.  (Doc. 38).

Disciplinary Action Status Report.  (Docs. 35-1 th. 35-7).[5]  The defendants filed a reply brief in support of their motion.  (Doc. 37).  The Court heard argument on the motion on April 16, 2014.

On this record, the Court considers the defendants' summary judgment motion.

---

[5] In support of her opposition to the defendants' motion for summary judgment, Ms. Brooks offered a number of documents that appear to be copies of her employment records. Although she has not established the admissibility of these documents, the defendants have not suggested that Ms. Brooks cannot present the material "in a form that would be admissible in evidence," and the Court finds that the material "could be reduced to admissible evidence at trial." Fed. R. Civ. P. 56(c)(2)("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999)(evidence may be considered on a motion for summary judgment "if the statement could be 'reduced to admissible evidence at trial.'") (citations omitted); *Jernigan v. Dollar General Corp.*, 2013 WL 452820, at *8 (N.D. Ala. Jan. 31, 2013) (same). The defendants included many of the same records in support of their motion for summary judgment.  (*See* Doc. 31-4, pp. 26-47).

## ANALYSIS

**Ms. Brooks has not established a prima facie case of sex, age, or race discrimination under the ADEA, Title VII, or § 1983.[6]**

A plaintiff may establish a claim of discrimination "through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). Ms. Brooks offers only circumstantial evidence of discrimination,[7] so the Court evaluates her claims through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

Under the *McDonnell Douglas* scheme, Ms. Brooks first has the burden to establish with evidence a prima facie case of discrimination. *McDonnell Douglas*,

---

[6] "[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Thus, Ms. Brooks may not assert her § 1981 claims directly against state actors but must proceed under § 1983. *See Butts v. Cnty of Volusia*, 222 F.3d 891 (11th Cir. 2000); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F. Supp. 993, 995-96 (N.D. Ala. 1995). Because § 1983 is the exclusive federal damages remedy against a state actor for the violation of the rights guaranteed by § 1981, Ms. Brooks has no claim for damages against the defendants in this case under § 1981. To the extent that injunctive relief remains available to her under § 1981, it would duplicate the equitable relief she may receive under § 1983. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Because Ms. Brooks pursues claims under § 1981 and 1983 against the individual defendants, the Court treats those claims as merged into one claim under § 1983.

[7] Ms. Brooks provided no evidence of discriminatory remarks made by anyone at the Department. Thus, her claims must be based on circumstantial evidence. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."); *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) ("[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification] are direct evidence of discrimination.") (internal quotations and citation omitted).

411 U.S. at 802.  Such evidence must be "adequate to create an inference that an employment action was based on a[n] [illegal] discriminatory criterion." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977).  If Ms. Brooks establishes a prima facie case, then the Court presumes that her employer acted illegally unless her employer articulates a legitimate, non-discriminatory reason for its action. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  The burden then shifts back to Ms. Brooks to produce evidence that shows that her employer's justification is a pretext for discrimination.  *Id.*

To establish a prima facie case of discrimination, whether under the ADEA, Title VII, or § 1983, Ms. Brooks must show that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly situated employees outside the class more favorably, and (4) she was qualified to do her job.  *Brooks v. CSX Transp., Inc.*, 2014 WL 480382, at *4 (11th Cir. Feb. 7, 2014).

Defendants do not dispute that Ms. Brooks has established that she is a black female over the age of 40 who was qualified for the job she held at the Department.  Defendants contend, however, that Ms. Brooks cannot 1) prove that she suffered an adverse action or 2) identify a similarly situated employee outside the class that was treated more favorably than her.  (Doc. 31, p. 13).

12

Adverse Employment Action

Defendants argue that because Ms. Brooks did not receive a reduction in pay after the allegedly discriminatory reprimand on July 2, 2008, and subsequent performance appraisal on September 17, 2008, but instead, received a pay raise, she did not suffer an adverse employment action.  (Doc. 31, pp. 13-14).  In her affidavit, Ms. Darlene Poole, Program Manager for the Jefferson County Department of Human Resources, states that the July 2, 2008 reprimand produced a seven point deduction on Ms. Brooks's annual evaluation.  (Doc. 31-8, p. 2).  As a result, Ms. Brooks's overall score fell from 31.1 (Exceeds Standards) to 24.1 (Meets Standards), qualifying Ms. Brooks for a one-step salary increase rather than a two-step salary increase.  "Therefore, her reprimand did lower her annual raise amount . . . ."  (*Id*.).

The Eleventh Circuit has held that a decrease in a pay raise is an adverse employment action.  In *Gillis v. Georgia Department of Corrections*, the plaintiff received a "met expectations" performance evaluation, which entitled her to a three percent raise, rather than an "exceeded expectations" evaluation, which would have entitled her to a five percent raise.  400 F.3d 883, 884-85 (11th Cir. 2005).  The district court concluded that because Gillis received a pay raise, even though it was a smaller raise than she would have received had her performance evaluation been more favorable, she did not suffer an adverse employment action.  The

13

Eleventh Circuit reversed the district court and held that a poor performance evaluation that directly results in the denial of a pay raise affects an employee's compensation and thus constitutes an adverse employment action under Title VII. *Id.* at 888.  Therefore, the Court concludes that Ms. Brooks has produced sufficient evidence of an adverse employment action to establish a prima facie case of discrimination; however, more is required before the burden shifts to the defendants.[8]

<u>Similarly Situated Employee Outside the Class</u>

To establish a prima facie case for discrimination, Ms. Brooks must identify a similarly situated employee who is not a member of Ms. Brooks's class who the Department treated more favorably than her.  The United States Supreme Court has recognized that even if a plaintiff is guilty of misconduct for which her employer might legitimately discipline her, the plaintiff may establish a claim of unlawful discrimination if her employer treated other employees outside of her protected class more favorably when the comparator employees engaged in the same misconduct.  *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282-83 (1976).  The comparators must be similarly situated to the plaintiff "in all relevant respects," *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), to "prevent

---

[8] Ms. Brooks claims that she was denied basic support, denied earned leave, removed from the promotional register for Program Manager, and harassed.  (Doc. 35, p. 4-5).  To the extent that Ms. Brooks argues that those incidents constitute adverse employment actions, she has failed to provide sufficient factual support for such claims.

courts from second-guessing employers' reasonable decisions." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (quotation marks omitted). "The most important factors in disciplinary context are the nature of the offenses committed and the nature of the punishment imposed." *Maynard v. Board of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (quotation omitted).

Ms. Brooks contends that Toney Hunter is a similarly situated employee who the Department treated more favorably than her. Mr. Hunter is a black male employee who is under the age of 40, so he potentially may serve as a comparator for purposes of Ms. Brooks's age and gender discrimination claims. (Doc. 31-3, p. 147).[9] Ms. Brooks testified in her deposition that she and Mr. Hunter held the exact same position. (Doc. 31-2, p. 99). According to Ms. Brooks, Mr. Hunter engaged in insubordinate behavior, but Department management did not discipline him. When asked how frequently Mr. Hunter criticized management, Ms. Brooks responded, "a lot," but she offered only one specific example of insubordinate conduct. She testified that Mr. Hunter "walked out of supervisors meetings because he was mad." (Doc. 31-3, p. 119). Ms. Brooks testified that "not only myself, but other people have heard Toney directly say that he wasn't going to do something," (Doc. 31-2, p. 99-100), but Ms. Brooks could not remember when

---

[9] Because Mr. Hunter is African-American, he may not serve as a comparator for purposes of Ms. Brooks's race discrimination claim.

these events occurred.  (Doc. 31-3, pp. 120-121).  When asked if she could be more specific regarding her allegation that Mr. Hunter openly criticized Department management and procedures, she replied "No."  (Doc. 31-3, p. 115).

Ms. Brooks acknowledged that she had never seen Mr. Hunter's personnel file, but she believes she would know if he had been subject to any type of adverse job action because Mr. Hunter confided in her.  (Doc. 31-2, p. 100).  Ms. Brooks introduced Department records that indicate that on September 4, 2008, Ms. Denard issued a warning to Mr. Hunter for "Failure to perf/Safety."  (Doc. 35-6, p. 4).  The records are excerpts from a "Jefferson County DHR Disciplinary Action Status Report."  The report lists, among other things, the name and division of each employee who is disciplined, the name of the employee's supervisor, the type of disciplinary action taken, and the type of violation.  (Doc. 35-6).  The chart distinguishes between "Failure to perf/Safety" violations and "Failure to perf/Insub" violations.  The report does not provide details about the incidents giving rise to the disciplinary action.

Besides Mr. Hunter's alleged similar conduct for which he purportedly was not disciplined, Ms. Brooks contends that Mr. Hunter's work conditions generally were more favorable than hers.  She explained that when Mr. Hunter "complained that he didn't want to supervise Meredith," Mr. Hunter's work was "dumped on me."  (Doc. 31-3, p. 116).  Ms. Brooks admitted that she was not present when Mr.

16

Hunter purportedly refused to manage one of his units, but "he told me." (Doc. 31-3, p. 118). When asked why Mr. Hunter did not want to supervise one of his units, Ms. Brooks testified that "there had been a child death, and . . . he was the supervisor during that time." (Doc. 31-3, p. 116).

Ms. Brooks's general allegations of inequitable treatment do not establish that Mr. Hunter's conduct was "nearly identical" to the conduct for which Ms. Denard reprimanded Ms. Brooks. On the record before the Court, Ms. Brooks has not carried her burden to demonstrate that she is similarly situated to Hunter in all relevant respects. *McCann*, 526 F.3d at 1373. Consequently, as a matter of law, she has not established a prima facie case of discrimination.[10]

**Ms. Brooks has not established a prima facie case for a hostile work environment claim.**

In her opposition brief, Ms. Brooks argues that she was "subjected to the creation of and exposure to a hostile work place" and was "abused and tormented on the job," which "caused her to retire involuntarily." (Doc. 35, pp. 4-5 & 18). To the extent that Ms. Brooks brings a separate claim for hostile work environment, she must "show harassing behavior sufficiently severe or pervasive

---

[10] In her opposition brief, Ms. Brooks identifies Ms. Carla Emmons as another comparator, (Doc. 35, p. 18), but Ms. Brooks provides very little evidence regarding Ms. Emmons and her employment record. Ms. Brooks has shown only that Ms. Emmons is a program supervisor who, on October 12, 2011, was charged with failure to perform her job, safety violations, and insubordination. (Doc. 35-6, p. 1). The record contains no information about Ms. Emmons's age or race or the conduct that led to disciplinary action.

to alter the conditions of [her] employment." *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (quotation omitted); *see also Kelly v. Dun & Bradstreet, Inc.*, 2014 WL 747235, at *3 (11th Cir. Feb. 27, 2014) (in hostile workplace action, plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .") (internal quotations omitted).   The environment must be one "that a reasonable person would find hostile or abusive." *Id*.  "[D]iscrete acts . . . cannot alone form the basis of a hostile-work-environment claim." *Id.*

When asked in her deposition what she meant by "the creation of and exposure to a hostile workplace," Ms. Brooks testified that she received, "[c]onstant scrutiny for things that . . . Toney could do that I couldn't do," like "asking for reports." (Doc. 31-3, p. 144).  She added, "if a report was not even due or if it was a report that I didn't normally have to do and there was a crunch time for everybody above me, I would routinely have to do extra work that was really not a part of my job description in order for the powers [that] be to get information to Montgomery." (*Id.*).  Ms. Brooks commented that this type of "scrutiny" was "understandable." (*Id.*).

Ms. Brooks also testified that she received "very nasty" emails from Ms. McClintock.  (Doc. 31-3, p. 130).  Ms. Brooks explained that by "nasty" she meant

that "they were e-mails that discussed what her expectations were," which Ms. Brooks found to be "derogatory in nature" and "demeaning, talking down to." (*Id*. at 131). Ms. Brooks nevertheless agreed that Ms. McClintock had the right to have expectations regarding individuals who worked for the Department. (Doc. 31-3, p. 131). Ms. Brooks could not recall other examples of harassment. (*Id.* at 132).

Ms. Brooks falls short of establishing a prima facie case for her hostile work environment claim. The evidence that she offers does not convey a pervasively harassing work environment that a reasonable person would find hostile or abusive.

**Ms. Brooks has not established a prima facie case of retaliation under the ADEA, Title VII, or § 1983.**

As with Ms. Brooks's claim for discrimination, when, as here, the record contains no direct evidence of retaliation, the Court must employ the *McDonnell Douglas* analytical framework to analyze a retaliation claim. *Bryant*, 575 F.3d at 1307. Under either the ADEA, Title VII, or § 1983, to establish a prima facie case of retaliation, Ms. Brooks must show that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Defendants argue that Ms. Brooks has not established that she suffered an adverse employment action or engaged in statutorily protected expression. (Doc. 31, pp. 13-14). The Court

19

already has concluded that Ms. Brooks established that she suffered an adverse employment action;[11] however, the Court finds that Ms. Brooks has not demonstrated that she engaged in statutorily protected expression.

"Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits." *Gerard v. Board of Regents of State of Ga.*, 324 Fed. Appx. 818, 825 (11th Cir. 2009) (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)).  To establish that she participated in a protected activity, Ms. Brooks must show "a subjective belief that her employer was engaged in unlawful employment practices and that her belief was objectively reasonable in light of the facts and record presented."  *Saffold v. Special Counsel, Inc.*, 147 Fed. Appx. 949, 951 (11th Cir. 2005) (quotation omitted).

Ms. Brooks asserts that the defendants retaliated against her after she protested about the Department's discriminatory treatment of a co-worker based on the co-worker's race, sex, and age.  (Doc. 35, p. 3).  The record does not demonstrate that Ms. Brooks ever voiced a complaint of race, sex, or age discrimination to anyone in the Department.  Ms. Brooks testified that on June 18, 2008, Ms. Denard told her that Ms. McClintock "wanted Margaret Moore written

---

[11] The standard for what constitutes an adverse employment action in retaliation cases is different from the standard used in discrimination cases.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Ms. Brooks's partial pay raise satisfies both standards.

up." (Doc. 31-3, p. 88).  Ms. Brooks refused to discipline Ms. Moore because as

Ms. Moore's direct supervisor, Ms. Brooks's believed that "Margaret's work was

fine."  (*Id.*).  According to Ms. Brooks, Ms. Denard and Ms. McClintock wanted to

write up Ms. Moore for "arbitrary reasons" that "had nothing to do with her work."

(Doc. 31-3, p. 89).  Ms. Brooks testified that she knew "it was an illegal write-up"

and that she "told Catherine that the write-up was illegal" because "according to

personnel policies, you cannot write a person up for something they did not do."

(Doc. 31-3, p. 91).  Ms. Brooks testified that she told Ms. Denard that the write-up

concerned something that had not happened in her presence, and Ms. Denard

replied, "okay.  Well, let's just go to Angela's office."  (Doc. 31-3, p. 92).  When

asked about her refusal to participate in Ms. Moore's write-up, Ms. Brooks

testified:

> It was sprung on me, okay, first of all.  According . . . to the State of
> Alabama personnel policies . . . a person is supposed to know what
> kind of disciplinary action they're going to receive.  And Catherine . .
> . came to my office and said we need to write Margaret up.  I said to
> Catherine that the incident that you're referring to – and I can't
> remember what it was offhand – Catherine, you saw that directly.  I
> said, I'm very uncomfortable with this. And if I remember correctly –
> and I'm pretty sure that I do because Catherine was very cooperative
> with me. . . . [W]e had a good relationship.  And so I said, you're
> writing her up for something that you said happened when I was not
> here, and it would be discriminatory, in my opinion, because I've
> never had a problem with Margaret. And so she said, okay, let's walk
> down to Angela's office.  It wasn't a refusal to do anything.  We were
> going to discuss it further in Angela's office.

(Doc. 31-3, pp. 95-97).

At no point in her testimony does Ms. Brooks state that she told Ms. Denard that she believed Ms. Moore was being disciplined because she was African-American or female or over the age of 40.  When asked in her deposition how the write up had anything to do with race, Ms. Brooks responded:

> Margaret is black.  Catherine is white.  Margaret was over 40. Catherine was under 40.  And Margaret has been denied a series of promotions and was one of the most highly qualified people to ever work for Jefferson County DHR, had a stellar work – impeccable work record.  Margaret always got written up right before somebody was going to be promoted to director.

(Doc. 31-2, p. 93).  When asked whether Catherine or Angela ever cited Ms. Moore's race as the reason for treating her differently, Ms. Brooks responded that "I don't know that I can answer that.  Not because I don't know, but I'm not going to be subjective. . . . They wouldn't have said it to me directly because they're both white. . . . I didn't hear anything, but I heard rumors."  (Doc. 31-2, p. 94).

Because the record contains no evidence that Ms. Brooks used the term "race" or referred to Ms. Moore's race when refusing to discipline Ms. Moore, Ms. Brooks has not established a prima facie case of retaliation.  *Brown v. City of Opelika*, 211 Fed. Appx. 862, 864 (11th Cir. 2006) (affirming summary judgment for defendant where record contained no evidence that the plaintiff engaged in a protected expression when she "admitted that she never mentioned the word 'race' when she complained about Kirby's behavior, that she had no knowledge of Kirby

making any racially derogatory comments, and that Kirby took out her anger on everyone, including the white office assistant.").

## CONCLUSION

As the Eleventh Circuit held in *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000):

> Some of our opinions from past years purport to announce as a general rule that summary judgment is not a proper vehicle for resolving claims of employment discrimination which often turn on an employer's motivation and intent.  There is some question about whether that supposed rule was ever followed, but no question that it has not been followed in recent years. . . . . While acknowledging that questions of fact in job discrimination cases are both sensitive and difficult and there will seldom be eyewitness testimony as to the employer's mental processes, the Supreme Court has told us that "none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993). . . . The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale.

*Id.* at 1025-26 (citations, brackets, and quotations omitted).  The Court has viewed the evidence in the light most favorable to Ms. Brooks, and it finds that even if one or more of the defendants treated her unfairly, she has not presented sufficient evidence of discriminatory motive to overcome the defendants' summary judgment motion.  Therefore, the Court GRANTS summary judgment in favor of the

defendants on all of Ms. Brooks's claims.  The Court will enter a separate order

consistent with this memorandum opinion dismissing the action with prejudice.[12]

     **DONE** and **ORDERED** this 30th day of April, 2014.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[12] The defendants raise several defenses related to qualified and sovereign immunity and the scope of Ms. Brooks's EEOC charge.  Because the Court grants the defendants' motion on grounds stated above, it does not reach the merits of the defendants' affirmative defenses.